# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| P.T. DAYUP INDO, | Case No.: CV 14-3984-DMG-(SHx) |
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| vs. | |
| IMEX Industries, Inc., a California corporation, | |
| Defendant. | |

This matter is before the Court to determine whether an Order for Writ of Attachment should be issued against defendant's assets in the sum of $6,422,181.90, pursuant to the Federal Rules of Civil Procedure 64.

Plaintiff filed an initial Complaint, requesting both an *Ex Parte* Temporary Protective Order (TPO) and a Writ of Attachment (Plaintiff's Memorandum in Support of *Ex Parte* Temporary Protective Order and Application for Writ of Attachment).

Plaintiff and Defendant filed pleadings regarding the TPO, which the Court denied on June 11, 2014. (Defendant's Evidentiary Objections to Jason Suk's Declarations in Support of Plaintiff's *Ex Parte* Application; Defendant's Opposition to Plaintiff's *Ex Parte* Temporary Protective Order; Plaintiff's Reply to Defendant's Opposition to *Ex Parte* Application).

After the TPO was denied, Plaintiff and Defendant filed additional pleadings regarding the application for Writ of Attachment (Defendant's Opposition to Plaintiff's Application for Writ of Attachment ["Defendant's Answer"]; Defendant's Objections to Plaintiff's Declarations; Plaintiff's Reply to Defendant's Opposition to Writ of Attachment; Plaintiff's Response to Defendant's Evidentiary Objections, Plaintiff's Evidentiary Objections to Defendant's Declarations; and accompanying Declarations. After reviewing the matter, the Court concludes that the plaintiff's application for Writ of Attachment should be denied.

# I. BACKGROUND

Over the past 25 years, Dayup Korea ["Korea"][1], a Korean company, plaintiff Dayup Indo Corp. ["Indo"], an Indonesian company, and defendant Imex Industries, Inc. ["Imex"], a California company, have collaborated in selling sports gloves to customers. (See Declaration of YJ Suk In Support of IMEX's Opposition to Plaintiff's *Ex Parte* Application for Temporary Protective Order, ("Suk Decl."), ¶ 2, 3; Declaration of Andrew Hong In Support of IMEX's Opposition to Plaintiff's *ex parte* Application for Temporary Protective Order, ("Hong Decl.") ¶ 2; Plaintiff's Complaint at 2).

---

[1]    The pleadings also refer to Dayup Korea as Hole in One Golf Land Co., Ltd. and Dayup Sports. This Court refers to the third-party corporation as Dayup Korea ("Korea"), consistent with the majority of references in the pleadings.

Korea designed sports gloves and purchased the raw materials required to produce the gloves. (Hong Decl., ¶ 4; Suk Decl. ¶ 5). Korea then sold these raw materials to Indo, which manufactured the gloves. (Id.). Imex handled sales and marketing of the gloves to customers, including Nike, Inc. ["Nike"]. (Id.).

Nike would send a purchase order (PO) to Imex for gloves, and Imex would then send its own PO to Indo, asking that the gloves be shipped to Nike's address. (Suk Decl. at ¶ 7). Once Indo shipped the gloves to Nike, Nike would pay Imex. (Id.). Once Imex received Nike's payment, it would pay Indo within 30 days after Nike received, reviewed and then approved the shipping documents received from Indo. (Id.). Imex made a profit from marketing and selling the gloves by buying them from Indo at wholesale prices and selling them to customers at retail prices. (Id.).

In 2013, Indo signed a Memorandum of Understanding with Korea, the supplier of raw materials, in which Indo agreed to continue working with Korea for the next two years for "product development tasks". (UC Suk Decl. ¶ 31; Exhibit 5 to YJ Suk Decl.). Then, in February 2014, Indo told Korea it would no longer buy materials from the company, claiming that Korea's delivery of goods had been unsatisfactory. (UC Suk Decl. ¶ 35; Exhibit 6 to YJ Suk Decl.). Indo refused to pay Korea for the $1.8 million in materials Indo had already ordered and which had been invoiced. (Suk Decl. ¶ 14, Ex 7).

In response, on May 13, 2014, Imex informed Indo that Imex refused to pay for fifty-eight POs it had sent to Indo. (Suk Decl. ¶ 9, ¶ 15, Ex. 8; Hong Decl. ¶ 11). The POs consisted of $6,422,181.90 worth of gloves that were to be shipped to Nike. (Id.). Although Nike had received all the gloves and paid Imex, Imex refused to pay the $6,422,181.90 it still owed Indo because it claimed its payment to Indo was contingent on Indo's $1.8 million payment to Korea.

(Id.). Imex asserts that Indo had violated a trilateral agreement with Korea and Imex by refusing to pay Korea for materials and by terminating its working relationship with Korea. (Defendant's Answer at 1).

Indo filed a complaint for breach of contract against Imex, Imex's president and principal, Steve Hong, and Imex's Vice President and principal, Andrew Hong, on May 23, 2014. (ECF 12-14).  On June 4, 2014, in a single pleading, Indo filed both an *ex parte* application for a TPO in the amount of $6,400,000 and an application for issuance of a Writ of Attachment for $6,422,181.90. (See Plaintiff's Complaint).  The Court denied plaintiff's TPO application on June 11, 2014, and now denies the plaintiff's application for Writ of Attachment. Oral argument was held on July 7, 2014.

## II. OBJECTIONS

The Court overrules both defendant's evidentiary objections to declarations in support of plaintiff's complaint and plaintiff's evidentiary objections to declarations in support of defendant's opposition.[2]

---

[2] Defendant also asserts that plaintiff's declarations in support of Plaintiff's Reply should be dismissed because plaintiff failed to include the information in its initial complaint. (See Defendant's Objections and Request to Strike, ¶ 3).  However, plaintiff submitted these declarations in an attempt to refute the affirmative defenses that Imex anticipated raising in its answer. (See Plaintiff's Reply to Defendant's Opposition to Writ of Attachment).  Nonetheless, even if the Court were to consider the declarations in support of Plaintiff's Reply, there is wholly insufficient evidence for the Court to address the strength of Imex's anticipated defenses. Therefore, the ruling on this application is necessarily limited to a probable validity analysis of plaintiff's initial claim.

### III. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 64, a federal court applies the seizure provisions of the state in which it sits. (Reebok Int'l, Ltd. V. Marnatech Enters, Inc., 970 F.2d 552, 558 (9th Cir. 1992); See Fed. R. Civ. P. 64). The Court can only order a writ of attachment to be issued if (1) the claim upon which the attachment is based is one upon which an attachment may be issued[3]; (2) *the plaintiff has established the probable validity of the claim upon which the attachment is based;* (3) the attachment is not sought for a purpose other than the recovery of the claim upon which the attachment is based; (4) the affidavit accompanying the application shows that the property sought to be attached, or the portion thereof to be specified in the writ, is not exempt from attachment; (5) the plaintiff will suffer great or irreparable injury if issuance of the order is delayed until the matter can be heard on notice; and (6) the amount to be secured by the attachment is greater than zero. (Cal. Code Civ. Proc. §485.220) (emphasis added).


### A.      Plaintiff has not established the probable validity of its claim.

A claim has "probable validity" where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim. (Cal. Code Civ. Proc. §481).

Indo asserts that it will likely obtain a favorable judgment against Imex in its breach of contract claim because IMEX's fifty-eight POs to Indo constituted written agreements, wherein Imex agreed to pay Indo in exchange for Indo's delivery of gloves to Nike. (Plaintiff's Complaint at 7). Indo asserts that since it fulfilled its obligations to Imex by successfully

---

[3] Under California state law, an attachment may be issued if it is: (i) on a claim for money based upon a contract, express or implied where the amount of the claim is fixed or readily ascertainable from the contract and not less than $500.00 exclusive of costs, interest, and attorney's fees; (ii) is not secured by real property; and (iii) involves a commercial claim if against a natural person. (Cal. Code. Civ. Proc. §483.010 (a)-(c))

delivering the gloves to Nike, Imex's refusal to pay Indo $6,422,181.90 for the gloves breached the written agreement formed by Imex's POs to Indo.  (Id. ¶ 1) .  However, because Plaintiff has failed to sufficiently refute defendant's assertion that Imex's payment to Indo was contingent on Indo's payment to Korea, Plaintiff has not demonstrated the probable validity of its claim.

Because Imex's POs to Indo were not intended to be "a complete and exclusive statement of the terms of the agreement", the POs did not constitute an integrated contract (See Cal. Civ. Proc. Code § 1856(d)).  Unlike Nike's POs to Imex, Imex's POs to Indo did not include integration clauses.  (See Hong Decl., 10, Ex. 1;  see also Grey v. Am. Mgmt. Servs., 204 Cal. App. 4th 803, 807 (2012) ("the existence of an integration clause is a key factor in divining [the parties'] intent").  Moreover, unlike Nike's POs to Imex, Imex's POs to Indo did not include a specified time frame in which the POs were to be filled, provide for or disclaim product warranties or product insurance, provide requirements for seller's invoices, or establish which state's law governs potential disputes.  See Hong Declaration, ¶ 10, Ex. 1; See also Sicor Ltd. v. Cetus Corp., 51 F.3d 848, 859 (9th Cir. 1995) (finding that a written agreement is not integrated where it is "silent as to such essential antecedent issues governing when, whether, and to what extent" a party would be obligated to pursue litigation).

When a contract is not integrated, the Court looks to "the circumstances under which [the contract was] made" to determine its terms (Cal. Civ. Proc. Code §1860).  Here, since the parties' prior course of dealings suggests that Imex's past payments to Indo had been contingent on Indo's reconciliation of funds with Korea (Hong Decl. ¶ 6, 7; Suk Decl. ¶ 6), Imex's latest POs to Indo appear to include the implied term that Imex's payment was contingent on Indo's payment to Korea.  Plaintiff has not demonstrated the probable validity of its claim, since it has not sufficiently refuted the existence of this implied condition precedent.

Furthermore, assuming *arguendo* that Imex's payment to Indo was not conditional on Indo's payment to Korea, it appears that plaintiff's case may not remain in federal court. Korea appears to be a necessary party to the case, pursuant to Rule 19 of the Federal Rules of Civil Procedure, because the existence of a trilateral agreement between Indo, Korea, and Imex is a central issue in the dispute. The alleged existence of a trilateral agreement between Plaintiff, Defendant, and Korea would give Korea "an interest relating to the subject of the action", since Korea would be entitled to a reconciliation of any monies Plaintiff recovers from Defendant. (See Fed. R. Civ. P. 19(a)(1)(B), See Hong Decl. ¶ 6, 7; Suk Decl. ¶ 6). Moreover, Korea's ability to "protect [its] interest" would be frustrated if the Court did not order that Indo reconcile with Korea any monies it received from Imex.  (See Fed. R. Civ. P. 19(a)(1)(B)(i)).

Adding Korea as an indispensable party would destroy complete diversity under 28 U.S.C. §1332.  Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A., 20 F.3d 987, 991 (9th Cir. 1994) ("diversity jurisdiction does not encompass a foreign plaintiff suing foreign defendants"), citing Cheng v. Boeing Co., 708 F.2d 1406, 1412 (9th Cir. 1983), cert denied 464 U.S. 1017 (1983).  Where joinder of a party that is "required to be joined if feasible" would destroy diversity, the Court must decide whether "in equity and good conscience" the action should be dismissed. (Fed. Civ. P. 19b). The Court must base its decision on whether or not to dismiss the case on four factors:

(1) the extent a judgment rendered in a person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.

Anrig v. Ringsby United, 603 F.2d 1319, 1325-26 (9th Cir. 1978).

Since a Judgment for Indo rendered in Korea's absence would prejudice Korea by allowing Indo to ignore conditions implied in the alleged trilateral contract, the District Court might dismiss this case. (See Lomayaktewa v. Hathaway, 520 F.2d 1324, 1325 (9th Cir. 1975) ("[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable").

Since Korea is likely an indispensable party, and joining Korea would eliminate federal subject matter jurisdiction over the claim by destroying complete diversity under 28 U.S.C. §1332, plaintiff's argument as to "probable validity" is weakened.

### III. CONCLUSION

For the foregoing reasons, plaintiff's application for Writ of Attachment is denied.